**Electronically Filed
Intermediate Court of Appeals
29990
30-SEP-2011
08:43 AM**

NO. 29990

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
HYRAM NAO, Defendant-Appellant,
and
LIZCINDAMAE MATSUO, Defendant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 08-1-0306)


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Foley and Reifurth, JJ.)

Defendant-Appellant Hyram Nao (Nao) appeals from the
Judgment of Conviction and Sentence (Judgment) entered by the
Circuit Court of the First Circuit (Circuit Court) on July 7,
2009.[1/] Plaintiff-Appellee State of Hawai'i (State) charged Nao
and co-defendant Lizcindamae Matsuo (Matsuo) by Felony
Information and Non-Felony Complaint. Nao was charged with (1)
promoting a dangerous drug in the third degree (Count II); (2)
possessing drug paraphernalia with intent to use (Count III); and
(3) unauthorized entry into a motor vehicle in the second degree
(UEMV II) (Count IV). Matsuo was charged with unauthorized
control of a propelled vehicle (UCPV) (Count I). Matsuo pleaded
no contest to the UCPV charge, and Nao proceeded to trial.

_____

[1/] The Honorable Michael A. Town presided.

A jury found Nao guilty as charged on Counts II, III, and IV. The Circuit Court sentenced Nao to five years of imprisonment, with a mandatory minimum term of three years, on Count II; five years of imprisonment on Count III; and one year of imprisonment on Count IV. The Circuit Court ordered that these sentences be served concurrently with each other and with any other sentence Nao was serving.

On appeal, Nao argues that the Circuit Court: (1) erred in admitting evidence of Nao's post-arrest statement telling Matsuo to shut up, to not say anything to the police, and to ask for an attorney; (2) plainly erred by allowing the prosecutor to make improper remarks during closing argument; (3) plainly erred in instructing the jury on the elements for UEMV II; and (4) erred in denying his motion for judgment of acquittal on the UEMV II charge. We affirm the Circuit Court's Judgment.

I.

On the same day that Saturn of Honolulu reported that a car, a Saturn Vue, had been stolen from its lot, the police apprehended Nao and Matsuo in the car. Matsuo was driving and Nao was in the passenger seat.

A.

Prior to trial, Nao filed a motion in limine to exclude a post-arrest statement he made to Matsuo. At the hearing on the motion, Officer Charles Rezentes (Officer Rezentes) testified that when he told Mastsuo that she was under arrest for driving a stolen car, Matsuo said that Nao told her it was Nao's car. Nao then told Matsuo to "shut up and wait for an attorney; get an attorney, not to say anything." The Circuit Court denied Nao's motion to exclude his statement.

B.

The following evidence was presented at trial. Edward Basuel (Basuel), a Saturn employee, cleaned and detailed a new Saturn Vue on the Saturn of Honolulu car lot. After finishing, Basuel left the key in the ignition and went to retrieve another vehicle from the storage lot. When Basuel returned about fifteen

2

minutes later, the Saturn Vue was gone. Basuel did not immediately realize that the car was gone.

Jose Trillo (Trillo), an events coordinator for Saturn of Honolulu, saw the Saturn Vue while it was being prepared for delivery. After seeing the Saturn Vue, Trillo left for five minutes, and when he returned, the car was gone. John Strandberg (Strandberg), the general sales manager for Saturn of Honolulu, was notified by a sales manager that the Saturn Vue had been stolen and instructed the sales manager to report the theft to the police. Strandberg testified that Saturn of Honolulu had not sold the Saturn Vue to Nao or Matsuo and that neither of them had permission to enter or be within the car. Basuel and Trillo testified that they had not given anyone permission to drive the vehicle off the lot.

The Saturn Vue was equipped with OnStar satellite technology, which was used to help the police locate the car. On the same day that the Saturn Vue was stolen, Officer Rezentes was advised by dispatch that OnStar had located the car. Officer Rezentes spotted the Saturn Vue, maneuvered his car behind the Saturn Vue, and at about 3:30 p.m., he activated his lights and siren to pull the Saturn Vue over. The Saturn Vue did not immediately stop. Officer Rezentes drove alongside the Saturn Vue and observed Nao, the passenger, motioning to Matsuo, the driver, to keep going. The Saturn Vue eventually pulled over. Officer Rezentes positioned his car in front of the Saturn Vue and Officer Keala Noda (Officer Noda) stopped his car behind the Saturn Vue, blocking it in. The Saturn Vue reversed into the front bumper of Officer Noda's car.

The officers arrested Nao and Matsuo. Officer Rezentes testified that once he advised Matsuo that "she was being arrested for a stolen vehicle," Nao told Matsuo something to the effect of "shut up and get an attorney." During a search incident to arrest, Officer Rezentes recovered from Nao's pants pocket a cylindrical tube with a bulbous end, which Officer Rezentes recognized as "[d]rug paraphernalia used to ingest

3

crystal methamphetamine." The tube contained a whitish residue which was later confirmed to be crystal methamphetamine.

After the State rested, Nao called Matsuo as his witness. Matsuo admitted that she had been convicted of driving the stolen Saturn Vue. Matsuo testified that she got the car from Nao, who drove the Saturn Vue to Matsuo's house to pick her up at about 1:30 p.m. on the day they were arrested. Later, Nao asked Matsuo to drive so that Nao could eat. As they were being stopped by the police, Nao made hand gestures and kept telling Matsuo to "just keep going." After they were blocked in by the two police vehicles, Nao put the Saturn Vue in reverse, causing it to hit the police vehicle behind them, because Nao did not want Matsuo to stop.

According to Mastuo, when the police officer told her she was being arrested for driving a stolen vehicle, she yelled at Nao, "I thought this car was your car? What going on, Hyram?" Nao responded by telling Matsuo to "shut up and no say nothing" and to "ask for a lawyer."

II.

We resolve Nao's arguments on appeal as follows:

A.

Nao argues that the Circuit Court erred in admitting evidence of Nao's post-arrest statement to Matsuo telling her to shut up, to not say anything to the police, and to ask for an attorney. Nao asserts that this statement should have been excluded as (1) irrelevant and unduly prejudicial; and (2) an impermissible comment on Nao's claim of the privilege against self-incrimination and on his exercise of his constitutional rights to remain silent and to counsel. We disagree.

The evidence that Nao directed Matsuo to shut up, to refrain from saying anything to the police, and to ask for a lawyer was highly relevant to showing his consciousness of guilt and criminal intent. Nao's statement to Matsuo came in response to Matsuo's asking Nao to explain what was going on and Matsuo's assertion that she thought the stolen Saturn Vue belonged to Nao.

4

Matsuo's remarks to Nao, her presence in the car with Nao, and the circumstances of her arrest clearly demonstrated that Matsuo had direct knowledge and information about Nao's involvement with the car.  Moreover, viewed in context, Nao's statement to Matsuo evinces Nao's concern that she could provide the police with information that would incriminate Nao.  Accordingly, Nao's attempt to silence Matsuo and dissuade her from sharing her knowledge with the police was strong and probative evidence of Nao's consciousness of guilt.  See State v. Arakawa, 101 Hawai'i 26, 32-33, 61 P.3d 537, 543-44 (App. 2003) (concluding that the defendant's threats of violence against potential testifying witnesses was relevant and admissible to showing the defendant's consciousness of guilt).

Contrary to Nao's contention, the admission of Nao's statement was not an impermissible comment on Nao's claim of the privilege against self-incrimination and on his exercise of his constitutional rights to remain silent and to counsel.  In analyzing the analogous question of whether a prosecutor has impermissibly commented on a defendant's exercise of his or her right to refuse to testify, the Hawai'i Supreme Court has held that "[t]he test to be applied is whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." State v. Padilla, 57 Haw. 150, 158, 552 P.2d 357, 362 (1976) (internal quotation marks and citation omitted).

Here, the State's introduction of Nao's statement to Matsuo was not "manifestly intended" and was not "of such character that the jury would naturally and necessarily take" the introduction of Nao's statement to be a comment on Nao's exercise of his right to remain silent or his right to counsel.  Most importantly, Nao, in his statement, did not invoke his right to remain silent or his right to counsel.  Instead, Nao instructed Matsuo to keep quiet and ask for a lawyer.

Moreover, the context of Nao's statement reveals that it was not motivated by Nao's concern over protecting Matsuo's constitutional rights. Rather, Nao's statement was directed at silencing Matsuo because Nao was concerned that Matsuo would provide the police with information that would incriminate Nao. Under these circumstances, the jury would not "naturally and necessarily" interpret the introduction of Nao's statement as a comment on Nao's exercise of his constitutional rights. Our conclusion is supported by decisions of other courts which have ruled that the admission of evidence that the defendant told others to remain silent was not an impermissible comment on the defendant's exercise of the defendant's right to remain silent. See Cameron v. Birkett, 348 F. Supp. 2d 825, 842 (E.D. Mich. 2004) (concluding that the defendant's instructing a co-defendant to remain silent was not an impermissible comment on the defendant's exercise of the defendant's right to remain silent and was relevant evidence of the defendant's consciousness of guilt); United States v. Warren, 578 F.2d 1058, 1073 (5th Cir. 1978) (en banc), rev'd on other grounds by 612 F.2d 887 (5th Cir. 1980) (en banc).

For the same reasons, we conclude that the State's introduction of Nao's statement was not an improper comment on Nao's claim of his privilege against self-incrimination. Hawaii Rules of Evidence (HRE) Rule 509 (1993) provides that "[t]o the extent that such privilege exists under the Constitution of the United States or the State of Hawaii, a person has a privilege to refuse to disclose any matter that may tend to incriminate the person." HRE Rule 513 (1993), in turn, provides in relevant part that "[t]he claim of a privilege, whether in the present proceeding or on a prior occasion, is not a proper subject of comment by judge or counsel. No inference may be drawn therefrom."

Nao argues that his statement should have been excluded under HRE Rule 513. We disagree. As previously explained, Nao's statement was not an invocation of his privilege against self-

6

incrimination. In his statement, Nao was not claiming his own privilege but was advising Matsuo to claim her privilege against self-incrimination. However, Matsuo's privilege against self-incrimination belongs to her, and not to Nao, and Nao cannot claim the privilege on Matsuo's behalf. The introduction of Nao's statement was not a comment, much less an improper comment, on Nao's claim of his privilege against self-incrimination.

In sum, Nao's statement was highly probative of his consciousness of guilt, and the introduction of the statement did not constitute an impermissible comment on Nao's claim of his privilege against self-incrimination or on his exercise of his constitutional rights. We reject Nao's contention that the probative value of his statement was substantially outweighed by the danger of unfair prejudice. See HRE Rule 403 (1993). We conclude that the Circuit Court did not err in admitting Nao's statement.

B.

Nao contends that the prosecutor's closing arguments that (1) the State's witnesses and Matsuo were credible and had no reason to lie and (2) it was not an issue that the pipe seized from Nao appeared to be drug paraphernalia constituted misconduct. Because Nao did not object to the prosecutor's remarks when they were made, we review his claims on appeal for plain error. Nao's contentions are without merit.

Contrary to Nao's assertions, the prosecutor's arguments regarding the credibility of witnesses did not impermissibly inject her personal beliefs into the proceedings and were not based on facts outside the record. Disputes over the credibility of witnesses arise in almost every case, and the State is entitled to make arguments about witness credibility. During closing argument, prosecutors are allowed "wide latitude" in discussing the evidence, and it is "within the bounds of legitimate argument for prosecutors to state, discuss, and comment on the evidence as well as to draw all reasonable

7

inferences from the evidence." State v. Clark, 83 Hawai'i 289, 304, 926 P.2d 194, 209 (1996).

In Nao's case, the prosecutor did not suggest that her arguments regarding the credibility of witnesses were based on personal knowledge or information that had not been presented to the jury. Instead, the prosecutor's arguments that the witnesses were credible and had no reason to lie were based on reasonable inferences drawn from the evidence presented. We conclude that the prosecutor's arguments regarding the credibility of the witnesses did not constitute misconduct.

We also reject Nao's claim that the prosecutor engaged in misconduct by "misstating the law" in presenting her argument about the pipe seized from Nao. The prosecutor's argument, which Nao challenges and characterizes as a misstatement of law, was as follows: "That the object was drug paraphernalia, it's pretty much not an issue, it's a glass meth pipe, it does appear to be one. Reason and common sense, appear." Nao contends that the prosecutor "misstated the law" by advising the jury that the State was not required to prove that the glass pipe seized from Nao constituted drug paraphernalia, but only that it "appeared" to be drug paraphernalia. When viewed in context, the prosecutor clearly was not purporting by her argument to advise the jury on the law, but was arguing that the evidence was so strong that the glass pipe constituted drug paraphernalia that it was not a reasonably disputed issue in the case. We further reject Nao's argument that the prosecutor expressed an impermissible personal opinion by arguing that the object seized from Nao "appeared" to be drug paraphernalia.

C.

Nao argues that the Circuit Court committed plain error in instructing the jury on the elements for UEMV II. The instruction challenged by Nao stated in relevant part:

> There are three material elements of the offense of Unauthorized Entry Into Motor Vehicle in the Second Degree, each of which the prosecution must prove beyond a reasonable doubt.

8

These three elements are:

    1.    That, on or about the 25th day of February, 2008, in the City and County of Honolulu, State of Hawaii, the Defendant <u>unlawfully</u> entered into a motor vehicle; and

    2.    That the Defendant did so without being invited, licensed, or otherwise authorized to enter into the motor vehicle; and

    3.    That the Defendant acted intentionally or knowingly as to each of the foregoing elements.

(Emphasis added).

    Nao argues that the instruction was erroneous because the plain language of the statute defining the UEMV II offense, HRS § 708-836.6 (Supp. 2010),[2] does not require that the entry into the motor vehicle be "unlawful." We conclude that any error in the Circuit Court's instruction was harmless. The effect of the alleged error in requiring the State to prove something not required by the offense statute would be to *increase* the State's burden of proof on the conduct element.[3] The giving of an instruction that *increases* the State burden of proof is not prejudicial to a defendant and cannot provide a basis for overturing the defendant's conviction. See United States v. Royal, 100 F.3d 1019, 1027 (1st Cir. 1996) (concluding that "the [trial] court's instructions, by using language that imposes a higher burden on the government than the law requires, did not prejudice [the defendant]").

    Nao suggests that increasing the State's burden on the conduct element of the crime may have made it easier for the State to prove the attendant circumstances element -- that the

---

[2] HRS § 708-836.6 provides in relevant part:

    (1) A person commits the offense of unauthorized entry into a motor vehicle in the second degree if the person intentionally or knowingly enters into a motor vehicle without being invited, licensed, or otherwise authorized to do so.

[3] HRS § 702-205 (1993) provides in relevant part that "[t]he elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as . . . [a]re specified by the definition of the offense . . . ."

defendant acted "without being invited, licensed, or otherwise authorized to [enter into the motor vehicle]." We disagree. Under the Circuit Court's instruction, the jury was required to find that the State had proved the attendant circumstances element as a separate element in order to return a guilty verdict. Increasing the State's burden of proof on the conduct element would not have misled the jury into believing that the State's burden on the attendant circumstances element had changed or been reduced.

D.

Nao argues that the State failed to present sufficient evidence to prove that Nao entered the Saturn Vue "without being invited, licensed, or otherwise authorized to do so." Nao acknowledges that the State presented evidence that Saturn of Honolulu employees Basuel, Trillo, and Standberg had not given Nao permission to enter into the Saturn Vue. Nao nevertheless argues that the evidence was insufficient because the State "failed to adduce substantial evidence that nobody from Saturn invited, licenced, or otherwise authorized Nao to enter the Saturn Vue that was taken from the lot . . . ." (Emphasis added.) In effect, Nao claims that the State cannot prove a UEMV II offense unless it introduces evidence that every person who could possibly have authorized entry into the vehicle did not authorize the defendant's entry. We disagree with this contention.

We conclude that the State presented substantial evidence that Nao entered into the Saturn Vue "without being invited, licensed, or otherwise authorized to do so." When viewed in the light most favorable to the State, see State v. Tamura, 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981), the evidence showed that: (1) the Saturn Vue was stolen from the lot of Saturn of Honolulu, and the theft was reported to the police; (2) Basuel, who last had possession of the car, and two other Saturn of Honolulu employees, Trillo and Standberg, had not given Nao permission to enter the car; (3) at about 1:30 p.m. on the

10

same day that the Saturn Vue was stolen, Nao drove the car to Matsuo's house to pick her up; and (4) Nao displayed his guilty knowledge that the Saturn Vue was stolen and indicated that he had entered into the car without being invited, licensed, or authorized to do so by: (a) telling Matsuo to keep driving when the police attempted to pull the Saturn Vue over; (b) reversing the Saturn Vue into the police car that was blocking it; and (c) attempting to prevent Matsuo from talking to the police by telling her to shut up and to ask for a lawyer.

Based on the evidence presented and the reasonable inferences the jury could draw from that evidence, there was sufficient evidence to support Nao conviction for UEMV II. The Circuit Court did not err in denying Nao's motion for judgment of acquittal.

III.

We affirm the July 7, 2009, Judgment of the Circuit Court.

DATED: Honolulu, Hawai'i, September 30, 2011.

On the briefs:

Craig W. Jerome
Deputy Public Defender
for Defendant-Appellant

Delanie D. Prescott-Tate
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*

Chief Judge

*Daniel R. Foley*

Associate Judge

*Lawrence M. Reifurth*

Associate Judge

11